# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR-15-53-M- |
| ) | |
| MICHAEL SHANDELON BROWN, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is defendant Michael Shandelon Brown's ("Brown") Motion for Severance, filed May 28, 2015. On June 03, 2015, the government filed a response. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

In February of 2015, a confidential informant provided information to Detective Jeff Reed ("Detective Reed") that Anthony Anderson ("Anderson"), an alleged member of the Rollin' 90s Crips, was distributing cocaine in the Western District of Oklahoma from his white Honda Civic. After a registration check of the Honda Civic revealed that the vehicle was registered to a residence at 3344 S.W. 24th Street, Oklahoma City, Oklahoma, Detective Reed started surveilling the house. During his surveillance, Detective Reed observed two black males arrive at the residence in a Kia Forte and enter the residence. After a few minutes, Detective Reed observed Anderson exit the residence and look into the Honda Civic. However, Detective Reed was not able to ascertain whether Anderson placed/retrieved anything in/from the Honda Civic. Subsequently, Detective Reed contacted Lieutenant Coniglione of the Oklahoma City Police Gang Enforcement Unit and instructed him to establish a perimeter and make a traffic stop on the Kia Forte. The two black males exited the residence, with one of them carrying a bag,

and left the house in the Kia Forte heading eastbound on S.W. 24th Street, and turned south onto S. Independence Avenue. Approximately around the 2500 block of Independence Avenue, Sergeant Richie and Lieutenant Coniglione, who were following the Kia in response to Detective Reed's request, observed the Kia cross the center line of the road. Sergeant Ritchie turned his emergency equipment on prompting the Kia to stop at approximately S.W. 28th Street and Independence Avenue. As the Sergeant approached the vehicle, the Kia accelerated in an attempt to elude the officers. After a brief pursuit, the Kia stopped around S.W. 21st Street and the driver, identified as Brown, and the passenger, identified as Daryl Ingram ("Ingram"), were apprehended by law enforcement and taken into custody.

During the search of the Kia, the officers found, in a black bag placed on the passenger side of the Kia, 709 grams of cocaine and $4,980.00. On March 17, 2015, a grand jury returned an Indictment against Brown and Ingram for one count of "possession of a Controlled Substance with Intent to Distribute", in alleged violation of Title 21, Section 841 of the United States Code. On March 24, 2015, defendant was arraigned.

## II. Discussion

Brown moves the Court to sever his trial from co-defendant Ingram's trial. Rule 8(b) of the Federal Rules of Criminal Procedure provides:

> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). Rule 14(a) of the Federal Rules of Criminal Procedure provides:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

2

Fed. R. Crim. P. 14(a).

Generally, persons indicted together are tried jointly. *United States v. Rinke*, 778 F.2d 581, 590 (10th Cir. 1985). "The defendant has the burden of clearly showing prejudice would result from a joint trial. . . . he must affirmatively show that a joint trial abridges his right to a fair trial." *United States v. Troutman*, 814 F.2d 1428, 1447 (10th Cir. 1987) (internal citations omitted). "Merely asserting a heightened chance of acquittal or the negative spillover effect of evidence against a co-defendant is insufficient to warrant a severance." *United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir. 1996) (internal citation omitted). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

Brown moves the Court to sever this trial because a joint trial with co-defendant Ingram will result in prejudice and compromise Brown's right to fair trial. Specifically, Brown contends a joint trial will result in prejudice to him due to: (1) Brown's trial strategy and the likelihood that he will want to call Ingram as a witness; (2) the likelihood that Brown will have an antagonistic defense to the defenses of Ingram; and (3) the presence of markedly different degrees of culpability between Brown and Ingram.

A. Trial strategy and co-defendant testimony

Brown asserts that a joint trial in this case will compromise his right to call his co-defendant Ingram, who is likely be a key part of his defense, as a witness. When a defendant claims the testimony of co-defendants is necessary and seeks severance of the trial, the trial court evaluates the following seven factors:

> 1) the likelihood that the codefendant would in fact testify at the movant's severed trial and waive his Fifth Amendment privilege; 2) the significance of the testimony in relation to the defendant's theory of defense; 3) the exculpatory nature and effect of such testimony; 4) the likelihood that the co-defendant's testimony

3

would be impeached; 5) the extent of prejudice caused by the absence of the testimony; 6) the effect of a severance on judicial administration and economy; 7) the timeliness of the motion.

*United States v. Martinez*, 76 F.3d 1145, 1152 (10th Cir. 1996) (quoting *United States v. McConnell*, 749 F.2d 1441, 1445 (10th Cir. 1984)).

First, Brown asserts that Ingram would not testify on Brown's behalf if they are tried together. In addition, Brown states that Ingram would waive his Fifth Amendment privilege and testify on behalf of Brown if they are tried separately.[1] Second, Brown states that Ingram's testimony would have a great significance in relation to his theory of defense because Ingram would testify that Brown did not knowingly/intentionally possess cocaine, did not have the power to control the bag that was in Ingram's possession, and did not intend to distribute any illicit narcotics, including cocaine. Third, Brown asserts that such testimony validates his defense theory and would likely exculpate Brown as the United States would have significant difficulty in proving a connection between Brown and the crack cocaine. Fourth, Brown contends that there is no likelihood that Ingram's testimony would be impeached because Ingram has not made any statements to law enforcement that would inculpate Brown in the distribution of crack cocaine. Fifth, Brown asserts that he would suffer significant prejudice in the absence of Ingram's testimony because Brown would have a significant hardship in convincing a jury that Brown did not have any knowledge of the crack cocaine under the facts of this case. Sixth, defendant contends that the severance will not significantly affect judicial administration and economy as either case could proceed on the June trial docket without altering the Court's current trial docket. Lastly, Brown asserts that while this motion comes "late in the game", Brown has struggled to make this decision to sever and only recently made the definitive decision to file this motion after careful consideration.

---

[1] In Brown's brief, his counsel acknowledges that this assertion has not been confirmed through Ingram's counsel.

However, the Court finds that there is a major flaw with Brown's assertions which are based on Ingram's alleged willingness to testify on behalf of Brown: Brown, other than his own statements, provides no evidence, such as an affidavit of Ingram, that Ingram would testify at a separate trial and would, in fact, waive his Fifth Amendment privilege and provide exculpatory testimony. Thus, the Court finds that Brown's uncorroborated statement that his co-defendant would testify on his behalf if the case is severed is unsupported by any evidence to warrant a severance on such basis. In addition, in this case, Ingram and Brown were indicted and charged with a single count of possession of crack cocaine with intent to distribute after they were arrested during their flight from a vehicle containing the drugs and money at issue. Furthermore, this motion was made "late in the game" as defendant concedes. Therefore, under these facts, judicial administration and economy clearly favors a joint trial. Accordingly, taking all these factors into consideration, the Court finds that Brown has failed to establish a joint trial will result in a real prejudice to his case on these grounds.

B. <u>Antagonistic defense</u>

When considering a motion for severance based upon mutually antagonistic defenses, a court should engage in the following three step inquiry:

> First, it must determine whether the defenses presented are so antagonistic that they are mutually exclusive. Second, because mutually antagonistic defenses are not prejudicial per se, a defendant must further show a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence. Third, if the first two factors are met, the trial court exercises its discretion and weighs the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration.

*United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007) (internal quotations and citations omitted). Further, irreconcilable defenses may require that defendants be tried separately; however, mere conflicting defenses do not, standing alone, satisfy the showing of prejudice

5

necessary for judicial severance. *United States v. McClure*, 734 F.2d 484, 488 (10th Cir. 1984). "[S]everance is not required unless the defendant proves that the defenses are so antagonistic that they are mutually exclusive." *United States v. Burrell*, 720 F.2d 1488, 1492 (10th Cir. 1983).

Having carefully reviewed the parties' submissions, the Court finds that even assuming that Brown's defense and Ingram's defense are mutually antagonistic,[1] Brown has not shown a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. Other than stating what his defense is, Brown has made no showing as to any specific trial right which would be compromised or as to how the jury would be prevented from making a reliable judgment about guilt or innocence. Instead, Brown argues that the Court should grant a severance because there is a strong likelihood that both co-defendants will blame each other for the alleged crime, and that such "pointing the finger at each other" could potentially confuse the jury thereby hindering its ability to make a reliable judgment. However, as the Tenth Circuit noted, one defendant's attempt to cast blame on another defendant is not, in itself, sufficient to require separate trials. *McClure*, 734 F.2d at 488 (citations omitted). In addition, to the extent a joint trial may lead to some confusion as Brown contends, it is something that can be addressed through a limiting instruction, and "juries are presumed to follow their instructions." *See Zafiro*, 506 U.S. at 939 (citation omitted). Because Brown has not established the second element, the Court finds that severance is not warranted on this basis.

### C. Degrees of culpability between co-defendants

Brown next asserts that a severance is warranted because different degrees of culpability exist between Brown and Ingram. Specifically, Brown contends that he did not have knowledge of the crack cocaine and the money discovered in the bag. In addition, while Brown does not

---

[1] What Ingram's defense will be is unknown at this time.

accuse Ingram, the evidence is clear that the cocaine and money were discovered in Ingram's bag and on the passenger side of the vehicle where Ingram was sitting. Moreover, as per Detective Reed's Testimony, law enforcement did not have any information that Brown was distributing any illicit narcotics and he was not considered to be a suspect at the time of the arrest; in contrast, Ingram had a warrant out for his arrest and was suspected of being the leader of a drug distribution enterprise. However, the Court finds that Brown's assertions above are without merit as Brown "cannot obtain severance simply by showing that the evidence against a co-defendant is more damaging than the evidence against [him]self." *United States v. Dazey*, 403 F.3d 1147, 1165 (10th Cir. 2005) (citation omitted). In addition, aside from the fact that this case is not particularly complex, in cases where defendants have markedly different degrees of culpability, "severance is not necessarily required because 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Id.* (citing *Zafiro*, 506 U.S. at 539). Accordingly, the Court finds that this case should not be severed on this basis.

III. Conclusion

For the reasons set forth above, the Court DENIES defendant Michael Brown's Motion for Severance [docket no. 60].

**IT IS SO ORDERED this 5th day of June, 2015.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE